Murphy vs. Farwell et al.

MERRICK MURPHY, Appellant, *vs.* LEONARD J. FAR-
WELL, et al.

. APPEAL FROM CIRCUIT COURT, RACINE COUNTY.

Heard July 7.]                              [Decided July 14, 1859.

*Foreclosure—Mortgage—Redemption—Lis Pendens.*

A suit was brought to foreclose a first mortgage in which the second mortgagee
was not made a party; while it was pending, a suit was commenced to fore-
close the second mortgage, to which the first mortgagee was not made a party.
The first suit proceeded to · a decree, under which there was a sale, and
afterwards there was a decree and sale in the second suit; held that
each purchaser did not acquire the entire estate except the interest represent-
ed by the other mortgage, but that the purchaser under the first mortgage
acquired the entire interest represented by that mortgage, and the equity of
redemption subject to the second mortgage, and the purchaser under the
second mortgage acquired only the interest represented by that mortgage.
The maxim of *lis pendens* does not apply to the purchase under the first mort-
gage, the suit to foreclose which was first commenced, it being brought to
enforce a prior and paramount right. When, therefore, after these two
sales, the second purchaser brought a suit to redeem against the first pur-
chaser, and the court below allowed the first purchaser to pay into court the
amount of the second mortgage, with interest and costs, and then dismissed
the suit; held that such order was right, inasmuch as the first purchaser
was the owner of the entire estate, subject to the second mortgage, and had
an absolute right to pay it.
The points here determined were not presented nor decided when this case
was formerly before this court, 2 Wis., 533.

The facts in this case are sufficiently stated in the opinions
of the court, and in 2 Wis. Rep., 533.

*O. H. Waldo,* for the appellant.

*J. Downer,* for the respondent.

*By the Court,* PAINE, J.   This case has once been in this
court on a demurrer to the complainant's bill.   It was a bill

to redeem certain premises from a sale on the foreclosure of a first mortgage, the complainant claiming under a second mortgage which he had owned and foreclosed, buying, himself, at the sale. He was not made a party to the first foreclosure suit, nor did he make those interested in the first mortgage, nor Farwell the purchaser under it, parties to his foreclosure suit. The demurrer was urged on the ground that by foreclosing and selling on the second mortgage, the complainant had so changed his position as to have lost the right to redeem, and that his bill was in the nature of an ejectment in equity. The case is reported in 2 Wis., 533, from which it appears that this court held that the complainant upon the facts set forth in the bill, had a right to redeem ; and the demurrer was overruled.

The case was sent back to the circuit where various proceedings were had ; including answers by the defendants ; a change of venue to Racine county ; the taking of testimony and preparation for final hearing; when the defendant Farwell having filed a petition claiming the right to redeem the premises, by paying the amount of the decree in the second foreclosure suit, interest and costs, paid the money into court, except the costs in this suit; and the court entered a decree adjudjing Farwell to be the owner of the fee, and Murphy to have only the rights of a subsequent mortgagee; that Farwell had the right to pay off Murphy's lien, and ordered the bill to be dismissed on payment of the costs in this suit, within ten days after notice of their taxation. The costs were paid, and from that decree the complainant appeals to this court.

It was urged by the counsel for the appellant, on the argument, that inasmuch as neither of these parties was bound by the proceedings in the foreclosure suit of the other, that the result of the two foreclosures and sales was to vest in each a perfect title to the premises, as against all the world except the other, and that all that was necessary for either to perfect

his title was to pay off the amount paid by the other. That this right was mutual, neither having any superiority over the other, but both standing originally on a footing of entire equality; and this being the case, he urged that the complainant, by his greater diligence in first offering to redeem, had acquired a superior equity over Farwell, who had delayed through several years of litigation to make any offer or attempt to exercise the right on his part.

But the counsel for the respondent contended that these parties did not stand on an equal footing after their respective sales. But that, on the contrary, Farwell purchasing at the sale under the first mortgage, acquired the entire right of the owner of the first mortgage, and the entire equity of redemption, subject only to the second mortgage, while Murphy purchasing at the sale under the second mortgage, in a proceeding against Cady alone, acquired nothing by his purchase, so far as the lots covered by both mortgages were concernedi for the reason that Cady's interest had been entirely divested by the previous sale on the first mortgage. So that Farwell owning the entire property in fee, subject only to the second mortgage, and Murphy owning only the interest represented by the second mortgage, Farwell had an absolute right to pay the second mortgage and extinguish its lien, as he was allowed to do by the court below. The case must be decided according to the correctness of the one or the other of these theories.

And we must confess at the outset that the proposition of the appellant's counsel seems to us difficult to comprehend, or to be arrived at. We understood him to insist that the purchaser at each of these sales acquired among other rights the entire equity of redemption in those lots covered by both mortgages, as against all the world, except the other. We cannot understand how such a result could have been accomplished. It would seem obvious that if the sale under the

first mortgage was operative at all, that it would have conveyed to Farwell, the purchaser, the entire equity of redemption remaining in Cady, who was a party to that suit. If this was done, it is difficult to see how the same equity of redemption could have been conveyed to Murphy at the second sale. If it did remain to be conveyed to Murphy at that sale, it is equally difficult to understand by what process of reasoning it could still be shown to be in Farwell.

If such a complex condition of things could be produced at all, it must have been from one or both of the following reasons, as no others were suggested : First, because Murphy was not a party to the first suit; or, secondly, because the rule of *lis pendens* applied to the sale, at which Farwell purchased; the second foreclosure suit being pending at that time. Let us see if either of these reasons is sufficient to produce such a result.

It seems very clear that the first is not. For if Murphy had not commenced his foreclosure suit until after the first sale, there can be no doubt that the entire interest remaining in Cady would have been transferred by that sale to Farwell, not only as against all the world, except Murphy, but as against Murphy himself. Of course, he not being a party, his rights would not have been affected by the proceedings. Farwell would have taken Cady's interest just as Cady held it, that is, subject to Murphy's mortgage. But he would have taken it, the whole of it, as well against Murphy as against Cady himself. And it needs hardly be said, that this is not at all inconsistent with the doctrine that a person, not a party to a proceeding is not bound by it; for it is very obvious that Murphy's rights would have remained quite as perfect as before, only in pursuing them he would have to pursue a different party. For a subsequent foreclosure against Cady, and a sale under it, would, as to the lots covered by the first mortgage, have been a mere nullity. It seems very clear, there-

Murphy vs. Farwell et al.

fore, that the fact that Murphy was not a party to the first suit, did not prevent the entire interest of Cady from being transferred to Farwell by the sale, as well against Murphy as every body else.

Would the doctrine of *lis pendens*, applied to the first sale, have produced the result contended for? It seems to us clearly not; because the entire equity of redemption being still in Cady at the time of commencing the second suit; then if the doctrine of *lis pendens* applied to the sale to Farwell in the first suit, Murphy at the purchase in the second suit would have taken the entire interest of Cady, as well against Farwell as against Cady, because such we understand to be the precise effect of the rule of *lis pendens;* that is, that a purchaser within the rule, is just as much bound by the final decree or judgment rendered, as is the party whose right he purchases. And he cannot by such a purchase prevent the one pursuing the property by litigation from obtaining his judgment or decree with the same effect it would have had if no such purchase had been made.

We think it clear, therefore, that the equity of redemption, or the entire interest remaining in Cady after the execution of the two mortgages, was acquired by one of these purchasers to the exclusion of the other, and not by both equally. If the rule of *lis pendens* did not apply to the sale under the first mortgage, then it was acquired by Farwell. If it did apply, then it was acquired by Murphy. The whole question, therefore, turns upon whether this rule was applicable or not; and we are very clearly of the opinion that it was not. The reason on which it rests fails entirely in such a case. That reason is to prevent parties, by voluntary conveyance, after litigation commenced, from eluding the grasp of the law, and baffling justice, to prevent mere intruders from acquiring rights in property after suits begun in regard to it, and then claiming the right to litigate over again, the questions which those suits

settled as against their vendors, or those whose interests they may have attacked. But it would be very strange to say, that this rule applied to a sale under a first mortgage, in enforcing a paramount and adverse title. Such a mortgagee is no intruder—no volunteer to acquire a right after suit begun. On the contrary, he is only enforcing a specific right to the property which he had before the suit. And the purchaser at such sale should be regarded in the same light as the mortgagee, because it is part of the right of the mortgagee that the purchaser should be protected. To apply the rule here, would be to say that after a first mortgagee has begun his foreclosure, and obtained his decree of sale, that a second mortgagee, by beginning his suit, arrests the proceedings of the first, or subjects him to the disability of being bound, or having a purchaser at his sale, bound by a judgment in a suit to which they are neither parties. It is plain that the reason of the rule does not exist here, and that to apply it, would be to subject a prior and a paramount right to an unjust and oppressive disability. And we think the authorities fully sustain this view.

In the case of *Parks vs. Jackson*, 11 Wend, 442, it was held that where a man having a contract for the purchase of land, on which he had made some payments, having also made some improvements on the land, perfected his title, and took a deed after a suit in equity brought against his vendor to set aside the vendor's title as fraudulent, that such purchaser was not within the rule of *lis pendens*. The opinion of Senator Seward contains a very able review of the authorities, and the reasons of the rule; and shows that these reasons did not exist in that case. And if a contract for purchase, before suit brought, will enable the party to go on and perfect his title by taking a deed afterwards without bringing him within the rule, it seems equally clear that a prior mortgagee may proceed to enforce all the rights that he had under the mortgage, without coming within it.

Murphy vs. Farwell et al.

The same doctrine is held in *Gibler et al. vs. Trimble,* 14 Ohio, 323, where the distinction is recognized between one going on, after suit, to perfect a right, or protect an interest which he had before, and one who, without any prior right, acquires his whole interest after suit brought. The court, after alluding to the rule of *lis pendens,* says: " But this doctrine does not apply to persons who had an interest in the subject-matter before suit commenced, and who should have been made parties; if such persons are not made parties, they may proceed, having an equity before suit, to clothe themselves with the legal title; because, having an interest before suit commenced, and being necessary parties, and not having been made such, neither equity nor the doctrine of *lis pendens* forbids them to protect themselves by acquiring the legal title."

*Clarkson et al. vs. Morgan's devisees,* 6 B. Mon. 441, and *Hopkins vs. McLaren,* 4 Cow., 667, are authorities to the same point. The exception is based not on the mere fact that the sale is under a decree or judgment, for that might not always be sufficient; but it is founded on the existence of a prior right before suit, which the owner subsequently may protect or enforce.

We think it clear, therefore, that the rule of *lis pendens* did not apply to the sale where Farwell became the purchaser, and that a second mortgagee cannot, by beginning a foreclosure suit, to which the first is not a party, diminish the right of the first, who had begun a prior suit, to proceed to decree and sale with the same effect as though the second suit had not been begun. Indeed, it would seem that if the rule is applicable at all, it would be against Murphy, and not in his favor. For a sale of the property having already been adjudged in the first suit, when his was commenced, it might be said that he was bound to take notice; that he could not, by proceeding against the property by a second suit, change the

Murphy vs. Farwell et al.

effect of the first. But we do not say that the rule would be applicable to a sale under a second mortgage; we only hold it not applicable to a sale under the first.

What, then, were the rights of these purchasers? Farwell acquired the interest of all the parties to the first suit, including the interest represented by the first mortgage, and the equity of redemption subject only to the second mortgage. Murphy having proceeded in his suit against Cady alone, could by a sale, after Cady's entire interest had been divested by the first sale, only have acquired the interest represented by the second mortgage, so far as the two lots covered by the first were concerned. Farwell then, as owner of the fee, subject to the second mortgage, had the right to pay it, as he was permitted to do by the court below.

It has been urged upon us that this conclusion is contrary to the former decision of the court in this case, and that that decision settled the whole matter now presented, so that it is *res adjudicata*. We have examined it very carefully, and are unable to perceive that it had any such effect. A judgment makes only that which was in issue, *res adjudicata*. What was in issue in this suit when it was then before this court? There was a demurrer to the bill, which was urged principally for the reason that the sale to Murphy had so changed his rights, as to deprive him of the right to redeem. If he had the right still, of course the demurrer would have to be overruled. The court held that he had, and the demurrer was overruled, as, undoubtedly, it ought to have been. That decision, therefore, made it *res adjudicata*, that the bill was not without equity, and that Murphy had the right to redeem. But whether he had all the rights that he may have supposed he had, whether the effect of allowing him to redeem would have been all that he or his counsel may have thought as indicated by the bill, was not settled, because not in issue.

It may be that some language used by the court assumes that the second sale had a different effect from that we think it had. But there was nothing in the issue presented, nor in the arguments urged, to call the attention of the court to the precise effect of that sale, further than to determine whether it cut off Murphy's right to redeem. This they determined, and determined properly, and this, we think, was all they determined.

They say, also, though it was not strictly presented by the issue, that Farwell had a right to redeem from the complainant. But whether the position of one was in any respect superior to that of the other; whether Farwell would have the right to do as he has since done, and pay off the amount of Murphy's mortgage, notwithstanding the latter had first filed his bill to redeem, neither of these things did they decide, because neither of them was presented. They are presented to us by this appeal, and we have determined them as already stated, and as we deem it, not at all in conflict with the former decision of the court.

The judgment of the court below must be affirmed.


COLE, J. *Dissenting.* It seems to me that the question involved in this case has already been adjudicated upon and settled in this court. And after the rigid application of the doctrine of *res adjudicata,* which we have made at this term to cases already disposed of, I do not feel at liberty to make the present case an exception in the application of that doctrine; even if I did not in all respects concur in the views previously expressed in the opinion reported in 2 Wis., 539. It is unnecessary to state at length the bill filed by Murphy. The substance is contained in the opinion of Justice Crawford just referred to. It is a bill for an account on the part of Farwell, of the rents and profits received by him while in pos-

session of the premises in controversy, to pay off and redeem the Severn mortgage; and that Farwell be compelled to surrender the possession of the premises, and to execute and deliver to Murphy a good and sufficient conveyance of an undivided half of lots one and three. The idea, object, aim and end of the bill, if I can understand it, is to discharge an encumbrance against the property, so that Murphy might become the owner of an indefeasible and absolute estate in fee simple, of the premises. It is such a bill as a person having the equity of redemption in a subsisting estate has a clear right to file, to discharge the property from an encumbrance outstanding against it.

To this bill a special demurrer was interposed, assigning several causes of demurrer. If any one is curious enough to look into that demurrer, he will see that the demurrants understood this bill precisely as I do. And in resisting the object of the bill, in the 8th ground of demurrer, the point is distinctly and clearly made, that Murphy had shown in "his bill of complaint, that Farwell and Cady had a right to the equity of redemption in the premises prior to his own."

The circuit court overruled the demurrer, as to all the points taken in it, and that decision this court affirmed in every particular. So that whatever points were taken in that demurrer, were distinctly, squarely and fully presented to this court and held to be insufficient in law. It is suggested now that in the previous decision, this court only decided that Murphy might pay off or redeem the Severn mortgage, but did not decide that he could redeem the property and perfect the title in himself.

It is said that Farwell must be considered as at once a mortgagee and mortgagor, uniting in himself the rights and obligations of a mortgagee under the Severn mortgage, and the rights and obligations of a mortgagor by operation of law under the chancery sale. This is certainly a cast of charac-

ters not often found in the books, that the same person, at the same time, should be a mortgagor and mortgagee. But with this I have nothing to do. I do not find any such intimation, or idea, or suggestion, advanced in the opinion of the court. Besides, no such point was presented for the consideration of the court. The bill is not formed with any other aspect than to redeem the premises. That is the principal relief asked for, and as incidental to this, an account is demanded. And it is said by very high authority, that no person, except a mortgagor, his heirs or privies in estate, has a right to redeem or to call for an account, unless it can be shown that there is collusion between them and the mortgagee. *Troughton vs. Binkis*, 6 Ves., 572 ; *White vs. Parnther*, 1 Knapp, 229 ; 2 Story Eq. Jur., § 1023.

The demurrer raised the point distinctly, as to whether, by the bill, it did not appear that Farwell had a prior equity of redemption in the premises. The court overruled the demurrer, thus saying that he had not. Furthermore, the court says : " Inasmuch as the bill before us states that at the time of the prior foreclosure proceedings Murphy was the assignee of the second mortgage, having a claim to the equity of redemption of the first mortgage, which was known to all the parties, and was not brought in, his rights remain unimpaired by the proceedings to which he was not a party, and we think he may well insist upon redemption at any time within the period of limitation, when he has not been foreclosed, (p. 539.) Again, " From the best examination of the case in all its bearings, which we have been able to give it, we cannot perceive why the present complainant is not entitled to redeem the portion of the premises purchased by Mr. Farwell, which was embraced in the sale, on the second foreclosure," &c. (p. 540.)

If by this language the court is to be understood as saying that by the prior foreclosure proceedings, Murphy, who had

a claim to the equity of redemption of the first mortgage, had not the right to redeem that portion of the premises purchased. by Farwell, and had no right to disengage the property from all encumbrance and perfect the title in himself, but only had the right to buy in the Severn mortgage, so as to become the holder of the two mortgages, then I despair of ever ascertaining the point decided in any case. But really, if the object and purpose of the bill are looked at, if the points raised by the special demurrer, are regarded, if the questions discussed by counsel, and necessarily considered by the court, do not show that this court then really and truly held, that under the facts and circumstances of the case, and the peculiar relations of the parties, Farwell and Murphy had a mutual and reciprocal right to redeem the premises, discharge all encumbrances, and become the owner of an absolute estate in fee simple; I think it may be safely said it never decided anything. And, if it did decide this, if it held that Murphy had a right to redeem the premises and perfect the title in himself, and that Farwell at the commencement of the suit, had the same right, then I understand my brethren to admit that Murphy, by his superior diligence, has acquired the stronger equity and should now be permitted to redeem the property.

As I have already said, whether the view taken of the case when before the court at the former hearing, be correct or not, I am not now disposed to discuss. Within the decisions made, at this term, that is not an open question, I therefore dismiss the case without further remark, simply adding, that in my opinion, the judgment of the circuit court was directly opposed to the previous decisions of this court, and the prior equitable rights of Murphy, and should be reversed.