### WILLIAM HUNT V. W. K. MAKEMSON ET AL.

(Case No. 4363.)

1. CONTINUANCE — DUE DILIGENCE.— An application for the continuance of a cause, made on a day of the term for which the cause had been set for trial, after a former application during the term had been refused, can neither be regarded as a first or second application under the statute, but is addressed to the sound discretion of the court outside of fixed rules; and the action of the court below thereon will not be reversed unless there has been a manifest abuse of discretionary power. Due diligence was not shown when no effort was made to procure the testimony of a witness by deposition until during the term, and after the first application for continuance was overruled.

2. TRIAL BY JURY.— A term of court began on the 3d day of the month, and the docket was called for default and to enable parties to demand juries during the call on the 7th. No jury was demanded by counsel in the cause (they being present) for either party when the case was called. After the call was completed and the jury cases were set for a future day, the non-jury causes were called for trial, and plaintiff's counsel applied for a continuance, which being overruled, they demanded a jury. *Held*, that the application for a jury came too late.[1]

3. It seems that for the purpose of testing the admissibility of evidence, the plaintiff's petition, in so far as it states facts amounting to a cross bill, may be regarded as such cross bill.

4. See case as to rights of legal though not beneficial owner of judgment, to notice, when an order of sale issues against his directions and to his prejudice as mortgagee of the land to be sold.

---

[1] This branch of the case was as stated in syllabus.

5. RIGHTS OF A JUNIOR MORTGAGEE.— The holder of a junior lien by recorded mortgage has the right to pay off the prior vendor's lien; that right is not extinguished by foreclosure under proceedings to which the holder of the junior lien is not a party, and may be shown under apt averments, in a controversy between the purchaser under the prior lien and the holder of the junior lien to adjust their respective interests in the property.

6. EVIDENCE.— See opinion for a case in which evidence to show the existence of rights under a mortgage and note, prior to the sale under judgment of the property bound thereby, was improperly excluded.

APPEAL from Williamson. Tried below before the Hon. W. A. Blackburn.

This case was complicated both by pleading and evidence, but is sufficiently stated by the opinion to properly understand the conclusions announced.

*Duncan G. Smith*, for appellant.
*Walton, Green & Hill*, also for appellant.

*Hancock & West*, for appellees.

GOULD, CHIEF JUSTICE.— Hunt sued Makemson and Fisher to set aside a sheriff's sale of two tracts of land, one of one hundred and sixty acres to Makemson for $25, the other of forty-four acres to Fisher for $15.25, had on the first Tuesday of August, 1880, by virtue of process under a judgment foreclosing a vendor's lien on said tracts, in a suit by B. S. Bybee *v.* T. M. Warren. Hunt alleged that he was the owner of the judgment by purchase and transfer thereof; that the sale was made in violation of his instructions to the sheriff, and without any notice thereof on his part, and that the purchasers had notice of these facts; that, being the owner and holder of a note for $1,000 on Bybee, secured by mortgage and lien on the premises, to enforce which suit was pending, he purchased the judgment for the purpose of protect-

ing that claim; that by reason of the sale, which was for prices grossly inadequate, he was defrauded out of his right to said judgment and his rights under his mortgage were clouded and endangered. That having learned since his purchase that defendant Makemson and one J. W. Posey claimed an equitable interest of $250 in said judgment, or out of its proceeds, he proffered, if the court shall find this claim well founded, to pay said amount or any amount the court might adjudge. The sheriff and judgment debtor, Warren, were also joined as defendants, and the prayer was for setting aside the sale, cancellation of the sheriff's deeds, and to be quieted in his ownership of the judgment, and for such general and special relief as he might be entitled to in law or equity. The defendants answered jointly, and amongst other matters alleged that at the time of the plaintiff's purchase Makemson and Posey were the owners of the judgment, and that the plaintiff well knew the fact; that the sale was made fairly, with the full knowledge of plaintiff; and that if the land did not bring its full value it was caused by plaintiff's unfounded claim to own and control said judgment.

Defendant Makemson also filed a cross bill, giving a detailed history of the claim of Makemson and Posey to own the balance due on the judgment when Hunt purchased it; also of the sale and purchase, claiming to be the owner of the land purchased, and praying to be quieted in his title; "and that all right, title and interest that plaintiff has or sets up be divested out of him and vested in said Makemson."

The defendant Fisher also filed a separate pleading, charging plaintiff's claim to be a cloud on his title.

The pleadings, especially those of plaintiff, were voluminous, and no attempt has been made to give many of the details or particulars on either side.

The case was tried by the court without a jury, and the judgment was for the defendants, with a decree

"that all right, title, interest and claim that the said William Hunt has or had in the said land at the institution of this suit be divested out of him and vested in said W. H. Makemson, and that the said Makemson be forever quieted in his title to the said land." There is also a similar decree in favor of Fisher. The first assignment of error complains of the refusal of a continuance.

It appears that on the 7th of January, 1881, when the case was regularly reached on the docket for trial, the plaintiff applied for a continuance, but his application was refused as insufficient. The judge, however, postponed the case, and it was set by agreement of counsel for 22d of January, 1881. On the 22d of January the plaintiff again moved for a continuance, and his motion was again refused. His counsel refer to the statute prescribing the requisites of a first application for a continuance. We do not regard this as either a first or second continuance under the statute. The statute looks only to ordinary continuances, and seeks to regulate no other. This is certainly not an ordinary first application. Nor is it the common case of a second continuance asked for at a term subsequent to a continuance granted. It is one of those applications outside of the statute which are addressed to the discretion of the court, and in this case it is not made to appear that the court abused that discretion. No effort was made to take the depositions of the witnesses residing out of the county until after the commencement of the term and the refusal of the first application. This was not using due diligence. One witness living in the county was served with subpœna after the first application was refused, but the application fails to set out what he would testify, or to show the materiality of his testimony.

In regard to the second assignment complaining that plaintiff was refused a jury trial, it is enough to say that the demand for a jury was not made until it was too late.

The third assignment is: "The court erred in refusing to admit in evidence the note and mortgage tendered by plaintiff and excluded by the court." The note was for $1,000, made by Warren to Hunt, January 29, 1875, and the mortgage was to secure the note, given and recorded on the same day, and covered the one hundred and sixty acres of land purchased by Makemson. The objection made and sustained was "that the same were immaterial and irrelevant to the issues involved." By reference to the bill of exceptions we find that they were offered to show plaintiff's equitable interest in the land in controversy and his right to control the judgment in controversy. If offered solely for the latter purpose we think they were irrelevant. Their introduction would have shed no light whatever on the issues as to the ownership of the judgment, or the right to control the process issued thereunder. But the plaintiff offered it also for the purpose of showing his interest in the land in controversy, and if, under any of the issues in the case, it was material to appellant, either in his character as plaintiff, or as defendant to the cross action in which Makemson and Fisher became plaintiffs, to show that he had an interest in the land as mortgagee, then these instruments were erroneously excluded. Plaintiff had in his petition alleged that he held such note and mortgage; and whilst his action was mainly founded on his claim that the judgment in law and equity belonged absolutely to him, he also claimed relief in his capacity as mortgagee, on the ground that the sale endangered his claim and that it was wrongfully had without notice to him. These allegations were not immaterial, and it was error to exclude as irrelevant evidence tending to establish them. Moreover the evidence was material to negative Makemson's right to have Hunt's interest in the land divested out of Hunt and vested in him. True, Hunt had not answered to this cross action. In so far, however, as his petition stated facts amounting to an

answer, it should, we think, for the purpose of making evidence admissible, be regarded as an answer. We thus again reach the conclusion that the note and mortgage were relevant evidence, and were erroneously excluded.

Counsel for appellee say that the exclusion, if erroneous, did not prejudice appellant, because the fact that such note and mortgage were held by plaintiff was proved by other evidence. It is true, as stated, that Smith testified in court, without objection, that he gave notice at the sale on July 6, 1880, that Hunt held a note and mortgage on the land; and Smith also testified that he was Hunt's attorney to foreclose the mortgage on the land in suit. This indirect evidence that Hunt had, or rather claimed to have, some sort of a note and mortgage, did not supply the excluded evidence. The instruments, if admitted, would have established that he did have such a note and mortgage as he had alleged.

Again, counsel say that, "the case being tried by the court without a jury, the judgment will not be reversed as a general rule, because evidence was improperly excluded or admitted, if the final judgment reached the justice of the case." There is a rule that, "where the judge sits to hear and decide the case without a jury, his having heard incompetent evidence would not require a reversal of the judgment when there was competent evidence sufficient to authorize its rendition." Melton v. Cobb, 21 Tex., 541. The reason is that the court "would discriminate between evidence which was legal and that which was not; giving the former the weight to which it was entitled, and rejecting the latter." Id. Obviously this reason would not apply where evidence is excluded. In a case tried by the court the improper exclusion of evidence may operate as injuriously as if the trial were before a jury. In neither case will it require a reversal if it appears that no injury resulted to the party offering the evidence.

If it could be assumed that the exclusion of evidence constituting the very foundation of plaintiff's claim to relief as mortgagee did not stop him from introducing evidence on that branch of his case, and that outside of the excluded mortgage and note he had introduced all the evidence which he had, it would still be difficult to say that no other result than the judgment rendered could have been reached, and that therefore the exclusion of the evidence operated no injury. In support of the judgment it is conceded that Hunt's claim that in law and equity the judgment and its proceeds belonged to him was not only not supported, but was negatived. Whilst the judgment was in the name of Bybee, and was so taken with the consent of Makemson and Posey, it satisfactorily appears that to the extent of the balance due thereon at the time of Hunt's purchase, Bybee held it in trust to pay over the proceeds to Makemson and Posey. Such being the case, we see no error in refusing to set the sale aside because made against his orders. Having no beneficial interest in the judgment, the sale operated no injury to him, regarded merely as its legal owner. But if, as such legal owner, by written assignments, he had, for his own protection as mortgagee, exercised a legal right in directing the sheriff not to proceed until his further orders, and had a right at least to notice of any intended sale, it is difficult under the evidence to say that it so clearly appears that he, either personally, or through his attorney Smith, in fact had such notice as to make it manifest that no other result than the judgment rendered could have been reached. In one point of view, the testimony as to notice is conflicting, and so viewed it cannot be said with confidence what should have been the result.

From the action of the court in excluding the mortgage, it appears probable that the court entirely disregarded

plaintiff's claim to relief as mortgagee, and passed only on his case as owner of the judgment. If so, we are inclined to the opinion that the plaintiff was entitled to have this branch of his case passed upon, and that the exclusion of the mortgage was an error which operated to his injury by cutting him off from that right.

But we are very clear that the exclusion operated to Hunt's injury in his character as defendant to Makemson's cross action. As the holder of a junior lien by recorded mortgage he had the right to pay off the prior vendor's lien; and whilst the exercise of that right may have been embarrassed by the foreclosure of that lien and the purchase by Makemson, the right itself was not extinguished, he not having been made, as he should have been, a party to the foreclosure proceedings. Makemson, however, in his cross action, sought to extinguish any rights Hunt had in the land. Certainly it was most material for the court to know what Hunt's rights and interests were before divesting them out of him and vesting them in Makemson. Hunt's proffer in his pleadings to pay Makemson and Posey's interest in the judgment, with a little liberality might be regarded as a proffer then to pay off the prior incumbrance on the land. If he had been allowed to do this, as we think he should have been, he would then have been in a condition to enforce his own mortgage. Without pursuing the question of the respective rights of the parties further, we are of opinion that the court erred in excluding the note and mortgage; that this error operated to the prejudice of Hunt and led to an erroneous decree, requiring a reversal of the judgment as to appellee Makemson.

The land claimed by Fisher was not embraced in Hunt's mortgage, and the exclusion of the mortgage constitutes no ground for reversal as to him. No error appearing in so much of the judgment as affects appellee Fisher, the

judgment as to him will be affirmed; but in so far as it affects appellee Makemson and the other appellees, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered November 25, 1881.]