**O'BRIEN et al. v. PERKINS et al.***
(No. 2409.)

(Court of Civil Appeals of Texas. Amarillo. July 1, 1925. Rehearing Denied Oct. 7, 1925.)

**I. Assignments for benefit of creditors ⬤⟿8—Instrument, executed by grantor to trustee to secure certain creditors, held to be deed of trust, and not assignment for benefit of creditors.**

Instrument, executed by grantor to trustee to secure certain creditors, *held* not to constitute assignment for creditors, but to be deed of trust lien, where it impliedly provided that possession of property by which it was secured should remain in grantor, and grantor might defeat instrument and reclaim property from trustee at any time before sale by latter by paying creditors, and any residue after payment of named creditors was to be paid to grantor; instrument not creating presumption that grantor was wholly insolvent when he executed it.

**2. Mortgages ⬤⟿624(3)—Rights of junior lienor as against prior lienor, who foreclosed his lien without joining junior lienor, held limited to redemption of prior lienor's lien only.**

In suit to foreclose a lien on land, rights of junior lienor as against prior lienor, who foreclosed his lien without making junior lienor a party to the action, and who acquired title to the property at the execution sale, *held* limited to a redemption of prior lienor's lien only.

**3. Equity ⬤⟿64—Aids the vigilant.**

Equity aids the vigilant.

**4. Marshaling assets and securities ⬤⟿6—Prior lienor held entitled, under doctrine of marshaling securities, to have junior lienor sell land covered by his lien first.**

In suit to foreclose a lien on land, prior lienor, who foreclosed his lien without making junior lienor a party to the action, was in equity the holder of the legal title to the land, and of superior equity, and was entitled, under doctrine of marshaling securities, to have junior lienor sell part of land covered by his lien first, and, if proceeds were insufficient to satisfy such lien, then, when other part was sold by junior lienor, excess, if any, was required to be paid to prior lienor, who, by his judgment and sale, had succeeded to all rights of mortgagor.

**5. Mortgages ⬤⟿624(3)—Junior lienor held entitled, under principles of subrogation only, to have prior lienor's lien revived in his favor and land covered thereby again sold under it.**

In suit to foreclose a lien on land, junior lienor, in seeking to redeem as against prior lienor, who had foreclosed his lien without making junior lienor a party, and who had acquired title to the property at the execution sale, was entitled, under principles of subrogation only, to have prior lienor's lien revived in his favor, and the land covered thereby to be again sold under it.

**6. Subrogation ⬤⟿I—Never used as instrument of injustice to defeat superior equity or overthrow legal title.**

Subrogation is a pure equity, and will be enforced with due regard to legal as well as equitable rights of others, and will never be used as an instrument of injustice to defeat a superior equity or overthrow a legal title.

**7. Lis pendens ⬤⟿8—Rule of lis pendens held inapplicable, where deed of trust under which junior lienor claimed was executed prior to time citation in suit to foreclose prior lienor's lien was made.**

Rule of lis pendens was inapplicable as between junior lienor and prior lienor, where deed of trust under which junior lienor claimed was filed prior to time citation in suit to foreclose prior lienor's lien was made.

**8. Lis pendens ⬤⟿18—Rule inapplicable, where record did not show that any notice of lis pendens was ever filed at any time.**

Common-law rule of lis pendens, as modified by Vernon's Sayles' Ann. Civ. St. 1914, arts. 6837–6840, was inapplicable in suit to foreclose lien, where it did not appear that any notice of lis pendens was ever filed at any time.

**9. Marshaling assets and securities ⬤⟿8—Prior lienor held entitled to have land sold in inverse order of alienation for payment of purchase money lien and to require holder thereof to marshal his securities.**

In suit to foreclose lien on land, prior lienor, who foreclosed his lien without making junior lienor a party to the action, and who acquired title at execution sale, *held* entitled to have land sold in inverse order of alienation for payment of purchase-money lien and to re-

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error on appeal of Shelton granted November 25, 1926.

quire holder thereof to marshal his securities, selling the half other than that covered by prior lienor's lien first.

**10. Marshaling assets and securities ⬳1—Marshaling does not fasten itself upon the situation at time the successive securities are taken.**

Marshaling, being an inchoate equity, does not fasten itself upon the situation at time the successive securities are taken, but is one to be determined at the time the remedy is invoked.

Randolph, J., dissenting.

### On Motion for Rehearing.

**11. Appeal and error ⬳1127—Briefs, motions, and pleadings are part of record and proceedings in Court of Civil Appeals, and motion to withdraw them will be denied, where filed after judgment rendered.**

Briefs, motions, and pleadings are a part of the record and proceedings in the Court of Civil Appeals, and motion to withdraw them and to affirm judgment will be denied, where filed after judgment of court was rendered.

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

Action by J. J. Perkins and others against W. O'Brien, the Guaranty State Bank, the Interstate Cattle Loan Company, the Interstate National Bank, and others. From the judgment, named defendants appeal. Reversed and remanded.

Carl Gilliland, of Hereford, for appellant O'Brien.

Madden, Adkins & Pipkin and Chas. H. Keffer, all of Amarillo, for appellants Interstate Nat. Bank, Interstate Cattle Loan Co., and Guaranty State Bank.

Lumpkin & Trulove and Underwood, Hamilton & Johnson, all of Amarillo, for appellees Shelton and Ozier.

Reeder & Reeder, of Amarillo, for appellee Perkins.

Fred T. Arnold, of Graham, for appellees Kay, White, Scruggs & Dodge.

HALL, C. J. On April 24, 1917, W. R. Ozier purchased 10,000 acres of land situated in Hutchinson, Potter, and Moore counties, Tex., and as part consideration therefor, executed four vendor's lien notes, aggregating $52,719.32, which stipulate for interest at 6 per cent., and 10 per cent. attorney's fees. The first note was due in six months, and the others in one, two, and three years after date, respectively. At the same time he executed a deed of trust upon the land to secure the payment of the notes. This instrument was duly recorded in Moore county September 14, 1921. On January 29, 1924, Masterson transferred these notes and liens to the appellee Perkins, who instituted this suit February 23, 1924, to recover the amount due, and prayed for a foreclosure of his purchase-money lien upon the entire tract of land.

On August 12, 1921, W. R. Ozier was also indebted to W. O'Brien and the National Bank of Commerce in the principal sum of $29,092.13, for which he executed and delivered his five promissory notes, which provided for 10 per cent. interest and 10 per cent. attorney's fees. At the same time he executed a deed of trust upon the west one-half of the 10,000 acres of land mentioned above to secure said notes. The 5,000 acres included in the west half are situated in Potter and Moore counties.

On August 29, 1922, the National Bank of Commerce filed suit in the district court of Potter county, said case being numbered 3652 on the docket of said court, to recover upon the five notes last above described, and to foreclose its deed of trust lien upon the west half of the land. Ura Embry, the trustee in said deed of trust, and W. P. Graham, who signed two of the above-described notes with W. R. Ozier, were also made parties defendant. The bank filed an amended petition in said cause No. 3652 on November 7, 1922, making T. A. Curtis, as trustee, an additional defendant, for the reason that on September 8, 1922, after its original petition was filed, W. R. Ozier had executed and delivered to T. A. Curtis, as trustee, a deed of trust on the entire 10,000 acres in question, to secure certain of his creditors named as follows: Lee Bivins, J. B. Ozier, J. W. Ozier, Guaranty State Bank of Amarillo, Amarillo Bank & Trust Company, City National Bank of Amarillo, Amarillo National Bank, Interstate National Bank of Kansas City, and the Interstate Cattle Loan Company of Kansas City. The amount of his indebtedness to these parties is not stated in the instrument. Before the trial of that case the Guaranty State Bank, Lee Bivins, and the Interstate Cattle Loan Company intervened and became parties defendant.

On April 12, 1923, judgment was rendered in said cause No. 3652, decreeing: (1) That the National Bank of Commerce recover of W. R. Ozier and W. P. Graham the amounts shown to be due by their notes, and that its deed of trust lien be foreclosed upon the west half of the land, subject to the prior purchase-money lien originally given by Ozier to Masterson; (2) that the Guaranty State Bank, Lee Bivins, and the Interstate Cattle Loan Company recover of defendant Ozier the amounts due them respectively, with foreclosure of the deed of trust lien given to Curtis, as trustee, subject to the Masterson purchase-money lien upon all the land, and also subject to the deed of trust lien given to the National Bank of Commerce as to the west half of the land; and (3) that the west half be sold free from the claims of Bivins and the other claimants

under the Curtis deed of trust, and that the proceeds be applied as follows:

"First, to the payment of all costs in this behalf expended, including the costs of such sale, and the remainder shall be applied to the payment of plaintiff's debt against the said Ozier and Graham as partners, and W. R. Ozier individually, and, if the same shall not be sufficient to satisfy and discharge said debt, then plaintiff shall have execution for the remainder thereof, as is provided by law. But, should the proceeds be more than sufficient to satisfy plaintiff's debt, then the remainder shall be turned over and delivered to the defendant T. A. Curtis, to be by him held subject to the trust deed or assignment under which he holds, as though a part of the proceeds of a sale conducted by him of the property described in the trust deed set up in this answer; that the purchaser of said land at such sale be by the officer placed in possession thereof within 30 days after the date of sale; that the deed of trust or assignment, dated the 2d day of September, 1922, by which the defendant W. R. Ozier conveyed his lands to T. A. Curtis to secure the payment of certain debts therein recited, be and the same is hereby fixed and established as a good and valid lien on all of the lands therein described, other than that upon which plaintiff's prior lien is hereby foreclosed, and upon any excess there may be of the proceeds of the sales of the land upon which plaintiff's prior lien is hereby foreclosed, over and above what is required to pay costs of suit, including foreclosure and sale and plaintiff's debts as aforesaid, to secure the payment of interveners' several debts, as is herein recited, fixed, and established, and that said defendant T. A. Curtis and said interveners, the Guaranty State Bank of Amarillo, Tex., Lee Bivins, and the Interstate Cattle Loan Company, a corporation, be and they are hereby discharged to go hence with their rights so decreed and established, and with their costs."

Order of sale was duly issued upon this judgment, in virtue of which the west half of the land was sold by the sheriff of Moore county on August 7, 1923. O'Brien became the purchaser at this sale for the sum of $25,500, and the sheriff conveyed him the property. The amount of his bid, less the costs, was credited on the judgment. After the sale, the National Bank of Commerce transferred to O'Brien the unsatisfied part of the judgment and interest, and nothing has since been paid him upon it.

As before stated, the appellee Perkins filed this suit February 23, 1924, and thereafter, on March 31, 1924, filed his second amended original petition, upon which the case was tried, making the Sinclair Consolidated Oil & Gas Co., T. A. Curtis, W. R. Ozier, J. B. Ozier, J. W. Ozier, Lee Bivins, W. O'Brien, Amarillo National Bank, Interstate National Bank, Interstate Cattle Loan Company, Guaranty State Bank of Amarillo, Amarillo Bank & Trust Company, Edwin E. White, Finley Scruggs, Jr., A. W. Kay, O. B. Dodge, A. A. Mail, M. W. Cunningham, Fred Stubbins, L. S. Zily, Sinclair Oil & Gas Company, The Humble Oil & Refining Company, the Amarillo Oil Company, J. L. Summers, the Guardian Savings & Trust Company, Louis B. Foots, H. A. Nobles, M. C. Nobles, and C. T. Herring parties defendant.

The pleadings are voluminous—covering 184 pages of the transcript. For the sake of brevity, we will not undertake to make a detailed statement of the numerous issues tendered by the various parties, and will only refer to such portions of the pleadings as may become necessary in considering the contentions urged here.

The case was tried by the court without a jury. In so far as the decree is material to this appeal, the judgment is that the appellee Perkins recover a judgment against Ozier for the sum of $67,764.36, and have a foreclosure of his vendor's lien upon the land described in the petition. The Guaranty State Bank of Amarillo recovered judgment against W. R. Ozier in the sum of $4,147.38; the Interstate National Bank recovered a judgment against Ozier in the sum of $3,000; the Interstate Cattle Loan Company recovered a judgment against him in the sum of $30,000; and judgment was also rendered against him in the sum of $16,112.75 in favor of J. M. Shelton. The judgment directs the issuance of an order of sale, commanding the sheriff or any constable of Moore county to first sell the east half of the lands in controversy as under execution, and further directed him to apply the proceeds of the sale: (a) To the payment of costs; (b) to the payment in full of the plaintiff Perkins' debt; and (c) to the payment in full of the debts of each of the defendants Guaranty State Bank of Amarillo, Interstate National Bank, Interstate Cattle Loan Company, intervener J. M. Shelton, and the remainder, if any, to be paid to the defendant W. R. Ozier; but, if said portion of said land does not sell for a sufficient amount to pay the debts in the order named in full, then the remainder, after paying all costs and plaintiff's debt, should be prorated "and paid to said three defendants and intervener in proportion to their debts." The judgment further decreed that, if the east half of said land should not sell for enough to pay the costs and plaintiff's debt in full, then that he sell the west half, and that the proceeds of the sale thereof be applied as follows: First, to the payment of costs; second, to the payment of plaintiff's debt; third, the remainder, if any, to be paid to intervener J. M. Shelton. The judgment then recites the fact that the National Bank of Commerce recovered judgment on the 12th day of April, A. D. 1923, in cause 3652 against Ozier in the sum of $35,281.30, with interest, and a foreclosure of the deed of trust lien upon the west half of the land; and further recites the sale of the west half in virtue of said judgment

and the purchase of the land by O'Brien at said sale for the price of $25,500, and continues as follows:

"And, it further appearing to the court that the intervener J. M. Shelton is entitled, under his cross-action against the defendant W. O'Brien to redeem said lands, and the balance of said judgment upon his paying to the defendant W. O'Brien the sum of $39,497.39, and it further appearing to the court that on the 28th day of May, 1924, the intervener J. M. Shelton tendered into court, for the purpose of making said redemption, said sum of $39,497.39, which is the total amount due on the above judgment, including principal, interest, attorney's fees, and all costs to date, and that said amount was by him paid into the registry of this court, and is now held by the clerk of this court, it is therefore ordered, adjudged, and decreed by the court that said intervener J. M. Shelton be and he is hereby granted and given an equity of redemption as to and against the defendant W. O'Brien, and the right to redeem said lands from the said defendant W. O'Brien. It is further ordered, adjudged, and decreed by the court that all right, title, interest, and estate in and to said lands and judgment be and the same is divested out of the defendant W. O'Brien and invested in the intervener J. M. Shelton, and that the said J. M. Shelton be subrogated to all the rights of the said W. O'Brien in and under the balance of said judgment, and it is further ordered, adjudged, and decreed by the court that the said sum of $39,497.39 so tendered into this court be by the clerk of this court paid to the defendant W. O'Brien."

From this judgment O'Brien, the Guaranty State Bank, and the Interstate Cattle Loan Company and the Interstate National Bank gave notice of appeal. The Interstate National Bank filed no appeal bond or assigned any errors. The other named appellants are properly before this court.

[1] The first contention by O'Brien to be disposed of is that the instrument executed by W. R. Ozier to Curtis as trustee is an assignment for the benefit of his creditors rather than a deed of trust. We cannot sustain this proposition. A careful consideration of the instrument itself convinces us that it is neither a statutory nor a common-law assignment for the benefit of creditors. It does not provide that the trustee shall take possession of the property. It impliedly provides that possession shall remain in the grantor Ozier, since the duty of caring for, paying taxes upon, and keeping the premises in good condition is imposed upon the grantor. It does not convey all of the grantor's property which is not exempt. It authorizes the trustee to sell, only in the event the grantor shall fail to pay the creditors named in it, and under this provision Ozier might have defeated the instrument and reclaimed the property from Curtis at any time before sale by the latter by paying the creditors. It provides that any residue after the payment of the named creditors shall be paid to the grantor, and we cannot presume

from reading it that the grantor was wholly insolvent when he executed it. It must, therefore, be construed simply as a deed of trust lien. Watterman v. Silberberg, 67 Tex. 100, 2 S. W. 578; Scott v. McDaniel, 67 Tex. 315, 3 S. W. 291; Tittle v. Vanleer, 89 Tex. 174, 29 S. W. 1065, 34 S. W. 715, 37 L. R. A. 337; Collins v. Sanger, 8 Tex. Civ. App. 69, 27 S. W. 500; H. T. Simon-Gregory D. G. Co. v. Dean (Tex. Civ. App.) 35 S. W. 305; Hall v. Conine (Tex. Civ. App.) 230 S. W. 823.

The next contention by O'Brien is that the court erred in permitting Shelton to redeem the west half of the land and O'Brien's judgment by tendering into court the amount of said judgment and interest after O'Brien had purchased the property under his foreclosure sale, and further erred in that part of the judgment which divests O'Brien of the title to the land and vesting title thereto in Shelton. We think this contention is sound. The facts and pleadings pertinent to this issue are briefly stated as follows: After the National Bank of Commerce, through which O'Brien claims, filed its suit against W. R. Ozier, W. P. Graham, and the trustee Embry on September 8, 1922, for the recovery of its debt and the foreclosure of its lien upon the west half of the land, Ozier executed and delivered to Curtis, as trustee, the deed of trust above discussed for the benefit of certain creditors, among whom was the Amarillo National Bank, through which Shelton's claim is derived. An officer of the Amarillo National Bank testified that this instrument was given to secure Ozier's indebtedness to the bank, which had existed for several months prior thereto, and which was evidenced by two notes in favor of the bank. He further testified that at the time the Curtis deed of trust was executed he did not know that the National Bank of Commerce had filed a suit, but that Ozier told him about the suit being filed before citation was served on Ozier about September 20, 1922. As stated, the National Bank of Commerce filed its first amended original petition in said suit No. 3652 on November 7, 1922. This amended petition is identical with the original petition, except that it makes Curtis, as trustee, a party defendant. The Amarillo National Bank was never made a formal party, but, together with the Interstate Cattle Loan Company, the Guaranty State Bank, and Bivins, appeared and answered. By its answer, the Amarillo National Bank alleged that it had sold and assigned the Ozier notes, and all of its interest under the Curtis deed of trust to Shelton, and prayed that Shelton be substituted as a party defendant.

On February 28, 1923, Shelton filed his plea of intervention, setting up the Curtis deed of trust, the Embry deed of trust, the judgment foreclosing said deed of trust, and the purchase of the west half of the land under foreclosure sale by O'Brien. He alleged that

the Ozier notes had been transferred to him by the Amarillo National Bank, and were the renewal of former notes which Ozier owed the Amarillo National Bank, and which were referred to in the Curtis deed of trust. He tendered into court, to be paid to O'Brien, a sufficient sum of money to pay off the original judgment which the National Bank of Commerce had recovered against Ozier in cause No. 3652, together with all interest and costs of that suit, and prayed that he be permitted to redeem the land from O'Brien, and that the judgment in favor of the National Bank of Commerce against Ozier be assigned to him, and that he be subrogated to all the rights of O'Brien in said land and under said judgment. As shown above, the judgment of the court decrees that O'Brien shall accept this tender by Shelton to the extent of the full amount of his judgment, interest, and costs, and then proceeds to divest O'Brien of all title and interest in and to the west half of the land and the judgment, and vests the same in Shelton.

[2] It will be seen that in the decision of this complex question the equitable doctrines of redemption, marshaling securities, · and subrogation as between O'Brien and Shelton are involved. In the first place, the judgment is erroneous, in that it gives Shelton the right to redeem the land instead of limiting his right to a redemption of O'Brien's lien only. Ozier did not convey the land to Curtis or any one else. As long as he held the title, he alone could redeem the land itself from the lien of the Embry deed of trust. The purchase by O'Brien at the execution sale absolutely barred Ozier's right to redeem the west half of the land, and thereafter Ozier had no interest whatever in it. By the sale, his equity of redemption with the fee passed to O'Brien. Russell v. Campbell (Tex. Civ. App.) 32 S. W. 858; Willis v. Smith, 72 Tex. 565, 10 S. W. 683, 17 S. W. 247; St. L., A. & T. R. Co. v. Whitaker, 68 Tex. 630, 5 S. W. 448. The rights of Shelton, as a junior incumbrancer, as against O'Brien, the prior incumbrancer, who has foreclosed his lien without making the junior incumbrancer a party to the action, and who has acquired the title at the execution sale, are clearly set out in 2 Jones on Mortgages (7th Ed.) § 1075, in the following language:

"A junior incumbrancer who, not having been made a party to a foreclosure of a prior mortgage, afterwards redeems, redeems, not the premises strictly speaking, but the prior incumbrance; and he is entitled, not to a conveyance of the premises, but to an assignment of the security. ·Therefore, if the prior mortgagee in such case has become the purchaser at the foreclosure sale, and has thus acquired the equity of redemption of the mortgaged premises, the junior mortgagee, upon redeeming, is not entitled to a conveyance of the estate, but to an assignment of the prior mortgage. Whereupon a prior mortgagee, as owner of the equity of redemption, may, if he choose, pay the amount due upon the junior mortgage, redeeming that. The decree in such case would be that the junior mortgagee redeemed the first mortgage; that the first mortgagee, as owner of the equity of redemption, redeemed from the junior mortgage, and, if he failed to do so, that the premises be sold, and out of the proceeds there be paid, first, the first mortgage and interest, together with any claim for repairs the prior mortgagee may have made upon the premises while in possession, second, the remainder to the payment of the second mortgage and interest upon it, and, in case there be a surplus, this is to be paid to the first mortgagee, as the owner of the equity of redemption."

[3] We think this is the judgment which should have been entered in this case, and that the judgment as entered is inequitable to O'Brien. Equity aids the vigilant. The vigilance of O'Brien is manifested in securing the first mortgage and in its prompt foreclosure. The want of vigilance on the part of the creditors named in the Curtis deed of trust is apparent from the fact that it was not obtained until after O'Brien had filed his suit. Its execution seems to have been initiated by Ozier. Only two of the creditors accepted under it, and Shelton's assignor, although one of the creditors, with knowledge that the suit had been filed, did not intervene and assert its rights in that action. It does not appear that either of them attended the sale or bid for the property at the time O'Brien purchased it. The want of equity in the judgment as rendered, if compared with the absolute equality of a judgment rendered in accordance with that outlined by Mr. Jones above, is illustrated by the following statement:

[4] Suppose that the debtor, Ozier, realizing that he could not pay off the Embry mortgage, but suspecting that the land contained oil or other valuable minerals, had gone to the Amarillo National Bank and ·proposed to give them a subsequent mortgage to secure a fictitious debt, with the understanding that said bank's lien should be kept secret until after O'Brien had foreclosed and purchased the property, and had in the course of time developed the mineral resources, thereby enhancing the property, at great expense, to many times its original value, and with the further understanding that, if minerals were discovered, the bank would file a suit to foreclose and redeem the land and divide it with Ozier. To state the proposition is to show its manifest injustice to a diligent creditor. By law O'Brien would be invested with the legal and equitable estate, yet a court of equity would divest him of the fruits of his labor and enterprise, and, instead of equity following the law according to the well-recognized maxim, we would have a case where the law would be set aside and its title abrogated in the interest of those who have not been diligent. It would open the door for the rankest fraud. It would be permitting Ozier to exercise, indirectly, through the

bank, a second equity of redemption—which has never been permitted. After O'Brien purchased the land and acquired with it Ozier's equity of redemption, he had the right to redeem from Shelton by the payment of the latter's notes. It is true that he did not by his pleadings pursue this course. He is, nevertheless, in the eyes of the chancellor, the holder of the legal title and the superior equity, and is entitled, under the doctrine of marshaling securities, to have Shelton sell the east half of the land first, and, if the proceeds do not satisfy the junior incumbrance, when the west half is sold by Shelton, the excess, if any, should be paid to O'Brien, who, by his judgment and sale, has succeeded to all the rights of his mortgagor Ozier. In the section referred to above Jones refers to the case of Collins v. Riggs, 14 Wall. 491, 20 L. Ed. 723, in which Judge Bradley, after declaring the rights of the junior incumbrancer to redeem by paying the whole of the mortgage debt, says:

"The money will be subject to distribution between the mortgagee and the purchaser, in equitable proportions, so as to reimburse the latter his purchase money and pay the former the balance of his debt."

In the instant case the mortgagee, O'Brien, is also the purchaser, since he has never sold the land after he acquired it, and is, therefore, under that authority, entitled to all of the excess after Shelton's debt has been paid, who, as stated above, must resort first to the east half for that purpose.

If Shelton had sued Ozier in a separate action without making O'Brien a party, and after judgment he had been tendered the amount of his recovery, he could not refuse to accept it and maintain a suit against O'Brien to redeem. Murphy v. Farwell, 9 Wis. 102, so holds, and bases the decision upon the legal conclusion that the purchaser under the first mortgage sale acquired the entire interest represented by that mortgage, including the mortgagor's equity of redemption, and that the purchaser under the second mortgage acquired only the interest represented by that mortgage—which was to collect his debt. In adjusting the equities in this case, it is important that the distinction which is recognized to exist between cases where a junior lienor seeks to redeem from a senior lienor, and cases where a junior lienor attempts to redeem from a senior lienor who has foreclosed the owner's equity of redemption and acquired that right by the purchase of the fee under his sale, be kept in mind. In cases of the first class the senior mortgagee is only entitled to his debt, and the mortgagor still has his equity of redemption as against both mortgagees. In cases of the second class the senior mortgagee has by his purchase acquired, not only the fee as against the defaulting mortgagor, but also

his right to redeem the premises from the second mortgagee by paying the amount due him. The judgment in the instant case reverses this rule, and rewards the junior mortgagee for his laches, and makes it possible for a defaulting mortgagor, who has been foreclosed, to acquire a second right to redeem through a fraudulent conspiracy with a junior lienor, who has not foreclosed and purchased anything. This distinction is clearly recognized by Judge Gaines in McDonald v. Miller, 90 Tex. 309, 39 S. W. 89, and in Gamble v. Martin, 60 Tex. Civ. App. 517, 129 S. W. 386.

In the case of Davis v. Walker (Tex. Civ. App.) 233 S. W. 521, 524, Judge Dunklin, in discussing the McDonald Case, said:

"It was held that a holder of a junior lien, who is not made a party defendant to a foreclosure of a prior lien, has no right to pay off the senior lien and take over the property until such junior lien holder first forecloses his lien and buys the equity of redemption under such foreclosure."

Now, let's apply that principle to the instant case: Even if O'Brien had not foreclosed, Shelton could not redeem the land itself by tendering O'Brien the amount of his debt, because the right to redeem the land was still in Ozier, and abided there until one or the other of his mortgagees had purchased it under a judgment of foreclosure. Until Shelton had foreclosed and purchased Ozier's right to redeem the land from both mortgages, he could only redeem the security represented by O'Brien's mortgage, or, to express it differently, his sole right as against O'Brien was to pay off the latter's debt and be subrogated to his lien, and, even then, Ozier would still have the right to redeem from Shelton by paying him the amount of both incumbrances. But that is not the case before us. Here, as shown above, all of Ozier's rights have passed by the sale to O'Brien, subject only to the superior lien of Perkins and the equitable right of Shelton to revive and redeem O'Brien's mortgage and sell under it. If the rule contended for by Shelton and decreed by the judgment prevailed, then, in cases where there are several mortgagees, it would be to the interest of those holding prior and superior mortgages and equities to defer action until junior and inferior lienors had foreclosed and bought in the land, with the mortgagor's equity of redemption, and then tender the last purchaser his debt and force him to disgorge. The most dilatory lienor would be the one highest favored. Such a rule would place a premium on laches, and provide an opportunity for perpetrating the grossest frauds. As said in Renard v. Brown, 7 Neb. 454:

"The defendants [junior lienors] claim the right to redeem the land and not the mortgage of the plaintiff [senior lienor, who has fore-

closed his lien and purchased the land]. The rule is well settled that the rights of those incumbrancers who were not made parties to the suit are not affected by the decree. [Citing authorities.] But the right to redeem is not to secure a conveyance of the land, but to redeem a senior incumbrance, and the party redeeming is entitled, not to a conveyance of the premises, but to an assignment of the security. Pardee v. Van Anken, 3 Barb. [N. Y.] 537; Miller v. Finn, 1 Neb. 301. The purchaser of land at a judicial sale is protected in his title, subject only to the payment of the incumbrances upon it. If a party holding a junior mortgage may redeem the land, by simply redeeming the mortgage security, then he is placed in a much more favorable situation than the purchaser of the equity of redemption. His incumbrance may be of the most trifling character, yet, if he may redeem the land he may obtain for a trifling sum property many times the value of his incumbrances. But such is not the law. The right of redemption is said to be a correspondent right to that of foreclosure, and a junior mortgagee may insist upon a redemption of the senior mortgage, in order to the due enforcement of his claims in the land. When he does redeem he becomes substituted to the rights and interests of the original mortgagee in the land. Story's Eq. § 1023. The owner of the fee of the equity of redemption redeems the land itself, and the decree in such case directs the mortgagee to convey all his right and title to the premises to the redeeming party. * * * The owner of a junior incumbrance redeems, not the premises, strictly speaking, but the senior incumbrance; and then he is entitled, not to. a conveyance of the premises, but to an assignment of the security."

Appended to Dickinson v. Duckworth, 4 Ann. Cas. 848, is an instructive note, citing numerous cases, amongst them Citizens' National Bank v. Strauss, 29 Tex. Civ. App. 407, 69 S. W. 86, as sustaining the rule here contended for. Numerous cases are also cited holding that the transferee of the mortgagor, who is not made a party to the suit to foreclose the mortgage, may exercise his right to redeem the land, and showing that that right remains with him alone, and to those who have acquired it from him by voluntary or judicial sale, and that it is a personal right which passes to his assignee in bankruptcy, and, upon his death, to his heirs and legal representatives. Many cases cited in that note are cited by Jones, in support of the section above quoted, from his work on Mortgages.

After a careful review of all the cases we can find bearing upon the question, we conclude that the weight of authority is with the rule above quoted from 2 Jones, § 1075. However, aside from this, we think the facts in the record require the application of the Jones rule. The uncontradicted evidence shows that the mineral rights, aside from the value of the surface estate of the east half of the land, are worth more than enough to pay both Perkins and Shelton. The witness Barnum, who, it seems, was an

oil investor, testified that the entire mineral right in the east half was worth from $30 to $35 per acre, which would make the mineral estate worth from $150,000 to $175,000, exclusive of the value of the fee. There is no testimony as to the value of the subsurface estate of the west half. Perkins' debt, as shown in the judgment, is a little less than $70,000, and Shelton's debt is $16,000, in round numbers. So the mineral estate of the east half is worth nearly twice the aggregate sum of the Perkins and Shelton debts. If Perkins and Shelton can both satisfy their claims by a sale of the east half, there is absolutely no reason why a court of equity should unsettle the established legal title of O'Brien in the west half. So far as this court knows, the value of the surface and subsurface estates may be sufficient to pay off every claim mentioned in the Curtis deed. It is not necessary, however, to decide that question, since only two of the other creditors have appealed and assigned error. Now, if O'Brien cannot compel Perkins and Shelton to marshal, he is deprived of his west half absolutely under the judgment rendered decreeing both his land and the judgment to Shelton, and his debt and his superior lien are worthless, because he has no recourse and no lien upon the east half, and no judgment against Ozier upon which to base an execution, because his original judgment has passed to Shelton by the decree. Even if he had a judgment or should fix an attachment lien now upon the east half, it would be subject to the prior liens in favor of Perkins and Shelton. We insist that this is not equity; if so, what becomes of the equitable maxims: "He who seeks equity must do equity"; "equity aids the vigilant, not those who slumber on their rights"; "equity follows the law"; "equity delights to do justice, and not by halves"; "equity imputes an intention to fulfill an obligation"?

What has been said as to the rights of Shelton against O'Brien also applies to the contentions urged in favor of Guaranty State Bank and Interstate Cattle Loan Company, because their rights, under the Curtis mortgage, are on a par with those of Shelton. None of the other defendants or interveners have appealed or assigned error, and the judgment as to them is affirmed.

[5, 6] We will now consider the question of subrogation. It is contended that Shelton, having tendered the amount of O'Brien's debt, is entitled, under the principle of equitable subrogation, to have the west half of the land decreed to him in fee. As stated above, we think his right is to have O'Brien's lien revived in his favor, and the west half again sold under it. Shelton does not attempt by his pleadings to be subrogated to O'Brien's securities, but insists upon having the land itself. When the instant case was tried, O'Brien had no debt against Ozier,

except such as is evidenced by the unpaid balance of his judgment, and, until his lien is revived for Shelton's benefit, he has no securities of Ozier in his hands. Long before Shelton's tender was made, O'Brien had matured his lien into a title by process of law, and his securities have ripened into a fee. Subrogation is a pure equity, and will be enforced, with due regard to the legal, as well as the equitable, rights of others. It will never be used as an instrument of injustice to defeat a superior equity or overthrow a legal title. Schmitt v. Henneberry, 48 Ill. App. 322; State Bank v. Potius, 10 Watts (Pa.) 148; Fink v. Mahaffy, 8 Watts (Pa.) 384; Albright v. Albright, 228 Pa. 552, 77 A. 896; Rambo v. Argentine State Bank, 88 Kan. 257, 128 P. 182.

O'Brien's lien was executed and recorded, as required by our registration statutes, and thereby became constructive notice to Shelton and his assignor, the bank. His judgment was entered and enforced according to specific provisions of our statutes governing the enforcement of liens. The maxim that equity follows the law protects his rights. 21 C. J. 196, 197. O'Brien, having the superior equity and the legal title, must be accorded the prior right to pay off any balance due upon Shelton's debt after the proceeds of the sale of the east half have been applied to it. The uncontradicted evidence is that Shelton bought the bank's notes and lien, knowing that O'Brien had already purchased the west half under his foreclosure. In the event he should fail to pay off Shelton's debt, and Shelton desired to be subrogated to his rights, the remedy would not be enforced to the extent that he could acquire the land itself. Equity will only revive and keep O'Brien's mortgage alive for his benefit, and he would be subrogated to the lien, with only the right to again sell the west half of the land, if the sale of the east half did not satisfy his debt, and apply the proceeds, first, to the payment of O'Brien's judgment; second, to the payment of whatever balance may be due him after applying the proceeds realized from the sale of the east half. Any surplus remaining from the sale of the west half must then be paid to O'Brien, who has acquired Ozier's equity of redemption and the legal title. This general principle in the application of the right of subrogation was recognized and applied in Fears v. Albea, 69 Tex. 437, 6 S. W. 286, 5 Am. St. Rep. 78; Sanger Bros. v. Ely-Walker D. G. Co. (Tex. Civ. App.) 207 S. W. 348; Evans v. Borchard, 8 Tex. Civ. App. 276, 28 S. W. 258; Bente v. Lange, 9 Tex. Civ. App. 328, 29 S. W. 813. So whether the relative rights of O'Brien and Shelton be adjusted according to the remedy of equitable redemption or subrogation, Shelton could not, in either event, get the land itself, but only O'Brien's revived lien with the consequent right to again sell the west half, applying the proceeds as above indicated. In this connection we will state that Bivins, Guaranty State Bank, and Interstate Cattle Loan Company were parties defendant in cause No. 3652 in which the O'Brien mortgage was foreclosed in favor of the National Bank of Commerce. The judgment in that case expressly adjudges the rights of said defendants to be inferior and subordinate to the lien of the National Bank of Commerce under which O'Brien claims. So, in addition to the principles of equity declaring O'Brien's rights to be superior, their priority is fixed by that judgment as to said defendant, and the question is now res judicata.

[7, 8] The rule of lis pendens has no application to this case. As the rule is recognized at common law, Shelton's assignor, the bank, would not be affected by it, because the Curtis deed of trust was executed on September 8, 1922, and, while suit No. 3652 was filed August 29, 1922, citation was not served upon Ozier until six days before the September term of the district court convened, which, according to the apportionment statute, was the 25th day of September, 1922. The common-law rule of lis pendens, as modified by V. S. C. S. arts. 6837–6840, has no application to the case, for the reason that the record does not show that any notice of lis pendens was ever filed at any time.

[9, 10] O'Brien insists that the land shall be sold in the inverse order of alienation for the payment of Perkins' purchase-money lien, and that Perkins be required to marshal his securities, selling the east half first. We sustain this contention. 3 Jones on Mortgages (7th Ed.) § 1622, 18 R. C. L. 468, § 17; Miller v. Rogers, 49 Tex. 398; Rippetoe v. Dwyer, 49 Tex. 498; Vansickle v. Watson, 103 Tex. 37, 123 S. W. 112; Hawkins v. Potter, 62 Tex. Civ. App. 126, 130 S. W. 643. This contention is opposed by Guaranty State Bank and Interstate Cattle Loan Company, who insist that, as between them and O'Brien, the property should all be sold and a pro rata disposition of the proceeds made between the several lienors. They base their contention mainly upon two cases, viz.: Green v. Ramage, 18 Ohio, 428, 51 Am. Dec. 458, and Gilliam v. McCormack, 85 Tenn. 597, 4 S. W. 521. The Ramage Case seems to support their contention, but the same court, in the later case of Stewart v. Johnson, 30 Ohio St. 24, 31, adjusted the rights of junior and senior mortgagees exactly in the manner laid down by Mr. Jones and quoted above, limiting the junior incumbrancers' rights to redeem the first incumbrance and not the land. We therefore do not consider the Ramage Case as authority. It appears that in the Gilliam Case the Tennessee Supreme Court considered only the equity of marshaling, which junior incumbrancers sought to enforce against first mortgagors. As in the Green Case, all of the lienholders were before the court. Neither of them had

foreclosed and bought the mortgagor's equity of redemption. Neither the right to redeem, the right of subrogation, nor the question of selling the property in the inverse order of alienation were considered in that case. There were numerous creditors; none of them having a particular lien upon any special fund. Only the inchoate equity of marshaling was involved, and that was enforced with reference to the rights of the mortgagor, as well as the subsequent mortgagees. In the later Tennessee case of Meek v. Thompson, 99 Tenn. 732, 42 S. W. 685, the same court refused to apply the rule in the Gilliam Case, and ordered the land sold in the inverse order of alienation, saying that the Gilliam Case clearly recognized that doctrine.

Again, the Tennessee court, in Mowry v. Davenport, 6 Lea, 80, 99, said that the equity of marshaling "is, indeed, not against the creditor, but the common debtor, to prevent him from obtaining the one fund by reason of the recourse of the creditor on the other. It is a creature of the court of equity for the attainment of justice, not to do injustice." While that case does not overrule the Ramage Case, it limits it to the particular conditions before the court when the decision was rendered.

Again, in King v. Patterson, 129 Tenn. 1, 164 S. W. 1191, the Tennessee court said that the equity of marshaling as between prior and subsequent attaching creditors must yield to previously acquired legal rights, and the court enforced the liens of the attaching creditors in the order of their priority, and not according to the pro rata rule adopted in the Gilliam Case. So we may safely assume that the Green Case is no longer authority in Ohio, and that the Gilliam Case is limited to the exact state of facts there shown. Marshaling, being an inchoate equity, does not fasten itself upon the situation at the time the successive securities are taken, but is one to be determined at the time the remedy is invoked, 18 R. C. L. 456. On the other hand, the equity of redemption is considered in itself "tantamount to the fee in law." St. L., A. & T. R. Co. v. Whitaker, 68 Tex. 630, 5 S. W. 448.

This record is barren of any facts which would justify a chancellor in denying O'Brien the right to have both Perkins and Shelton marshal as to the east and west half, or that would warrant the court in permitting Shelton to redeem as to O'Brien.

The former opinions are withdrawn.

For the reasons stated, the judgment is reversed, and the cause is remanded.

JACKSON, J., not sitting.

GULEKE, Special Judge, concurs.

RANDOLPH, J. (dissenting). Previous to the rendition of the opinion of the majority and of this dissenting opinion, there have been two other opinions written in this cause. The other two opinions were concurred in by the Chief Justice; Associate Justice Jackson not sitting. We granted motions for rehearing on those opinions, because we believed we were in error, and, upon the third opinion being prepared by the writer, the Chief Justice refused to concur. A special associate justice having been appointed in the case, he concurred with and approved the opinion of the Chief Justice herein filed; hence this opinion will be presented as a dissent to the conclusion of the majority thus constituted.

For the purposes of this opinion, I restate the case that my view of the questions of law may be fully illustrated:

W. O'Brien and the Interstate Cattle Loan Company, Interstate National Bank and Guaranty State Bank—the first party and the last named three parties—by separate appeals have appealed from a judgment in the district court of Potter county, Tex., rendered in a suit filed in that court on February 23, 1924, brought by J. J. Perkins, as plaintiff, against W. R. Ozier, Amarillo National Bank, Interstate Cattle Loan Company, W. O'Brien, and Interstate National Bank et al. Plaintiff's suit was based upon certain vendor's lien notes, in which judgment was prayed for against Ozier as maker, and for the foreclosure of a vendor's lien securing the payment of the notes against each and all of the defendants named in said petition.

The notes sued on were executed by the defendant Ozier to R. B. Masterson on April 24, 1917, and were given in part payment for a certain body of land amounting approximately to 10,000 acres, and, in addition to the retention of the vendor's lien in the deed, a deed of trust was executed by Ozier to C. E. Weymouth, trustee, to secure the payment of said vendor's lien notes so given to Masterson. After the maturity of the vendor's lien notes sued on, R. B. Masterson, the then owner, sold and transferred them and all of the liens securing the payment of same to J. J. Perkins, who, as such transferee or owner, filed this suit, as stated. Appellant O'Brien filed an answer on May 30, 1924, by the terms of which he alleged that W. R. Ozier, on August 12, 1921, owned certain land in Moore county, Tex., subject to the vendor's lien and deed of trust given to secure the Masterson purchase-money debt, and on said date Ozier executed and delivered to one Embry a deed of trust lien upon about 5,000 acres of said land, hereinafter being known and described as the west one-half of the land purchased by Ozier from Masterson, to secure the payment of certain indebtedness due to the National Bank of Commerce and appellant O'Brien, which deed of trust was filed for record in Moore county on September 14, 1921, and afterward O'Brien sold the notes evidencing the indebtedness to him and described in said last-named deed of trust to

(276 S.W.)

the National Bank of Commerce, who thereby became the owner of all the indebtedness secured by the Embry deed of trust. On August 29, 1922, the National Bank of Commerce filed suit in the district court of Potter county, Tex., asking judgment for the debt, principal, interest, and attorney's fees due upon the last-named notes, and to foreclose the deed of trust lien securing the payment of same on said west one-half of such land. After the filing of the last-named suit, on September 2, 1922, W. R. Ozier executed and delivered a deed of trust to T. A. Curtis, trustee, upon the whole of said 10,000-acre tract for the purpose of securing Lee Bivins, Guaranty State Bank of Amarillo, Interstate Cattle Loan Company, Interstate National Bank, National Bank of Commerce of Amarillo, and the Amarillo National Bank of Amarillo, Tex., and other creditors, in the payment of various debts recited in said last-named trust deed and owed by Ozier to the beneficiaries therein named. The National Bank of Commerce on November 7, 1922, filed in the suit of National Bank of Commerce v. Ozier its amended petition, and practically the only amendment made by said petition which differentiates it from the original petition is to make T. A. Curtis, trustee, in the deed of trust dated September 2, 1922, a party defendant in said suit, but the beneficiaries in said trust deed to Curtis were not made parties to said suit of National Bank of Commerce v. Ozier. However, Lee Bivins, Guaranty State Bank, and the Interstate Cattle Loan Company, who were beneficiaries in the Curtis deed of trust, intervened in said suit and asserted their debts and liens.

Judgment was rendered in said suit of National Bank of Commerce v. Ozier on April 12, 1923, by the terms of which the National Bank of Commerce recovered judgment for the sum of $35,281.30, with interest thereon at 10 per cent. per annum against W. R. Ozier, and for a foreclosure of its trust deed lien of August 12, 1921, upon the west one-half of the said Ozier land against O'Brien, Interstate Cattle Loan Company, Guaranty State Bank, and T. A. Curtis, trustee, and with other provisions not now necessary to state. An order of sale was issued under said last-named judgment, and the west one-half of the said Ozier 10,000-acre tract was sold by the sheriff of Moore county to appellant O'Brien for the sum of $25,500, and O'Brien afterwards became owner by purchase from the National Bank of Commerce of the balance of the judgment in this last-named case, after crediting same with the amount of his bid. In this suit the appellant O'Brien, in addition to asserting title to the west one-half of said land, subject to the suit to foreclose a vendor's lien by plaintiff Perkins, prayed that the east one-half of said land be sold to satisfy plaintiff Perkins' vendor's lien debt before a levy is permitted on and before sale of the west one-half of said land so purchased by him as above stated.

The appellee Amarillo National Bank filed its original answer in this case, setting up the fact that it had sold its debt and notes secured by the Curtis deed of trust to J. M. Shelton, and appellee J. M. Shelton intervened and answered in this cause, and alleged that since the filing of this suit he had purchased from the defendant the Amarillo National Bank the indebtedness owing to said bank by Ozier, as well as all liens, rights, title, equities, and redemptions, whether legal or equitable, in and to the lands in controversy, and declaring on same in this suit.

Upon the trial of this case the trial court entered a judgment in favor of appellee J. J. Perkins for the amount of his debt, and for foreclosure of his vendor's lien on the whole 10,000-acre tract, and in the judgment directed that the east one-half of the land be sold first to satisfy Perkins' judgment, and, in the event the sale of the east one-half did not bring enough to satisfy the judgment, then that the west one-half be sold, and, if the sale of that part did not bring a sufficient amount to satisfy the judgment in Perkins' favor, then that the mineral rights under a part of the land in the west one-half be sold, and, in case that the sale of the whole tract and of the mineral rights did not satisfy said judgment in full, that the balance be made out of Ozier under execution. It was further decreed by the trial court that, in the event the east one-half of the land should sell for more than a sufficient amount to pay off appellee Perkins, then that the proceeds in excess of said amount be paid to the Guaranty State Bank, the Interstate National Bank, the Interstate Cattle Loan Company, and intervener J. M. Shelton in proportion to the amount due them by Ozier; in the event it was necessary to sell the west one-half of said land, then that the excess, after paying the appellee Perkins' debt, be applied and paid to the intervener J. M. Shelton. It was further decreed by the court that the intervener J. M. Shelton, who had tendered into court and paid into the registry thereof the sum of $39,497.25, which was the full amount of the principal, interest, attorney's fees, and costs of the judgment in the case of National Bank of Commerce v. W. R. Ozier, be granted an equity of redemption as against W. O'Brien, appellant, as to the west one-half of said land, and that the funds so placed in the registry of the court by said intervener be decreed to be the property of the appellant W. O'Brien, and that the west one-half of said land consisting of about 5,000 acres be decreed to be the property of the intervener J. M. Shelton, subject, however, to the terms of said judgment.

I shall discuss the questions arising in the case without reference to the order of their presentation in the briefs of the appellants,

giving my views on each question as I deem the determination thereof important and related to the question following it.

The lien under which O'Brien holds and claims was a prior lien to that held by the appellee Shelton, which he had purchased from the Amarillo National Bank, and, of course, Shelton's rights were subordinate to the enforcement of such prior lien upon the west one-half of the land. The National Bank of Commerce brought its suit to enforce such prior lien by foreclosure on the west one-half of the Ozier land. As stated above, Ozier had executed and delivered to T. A. Curtis, as trustee, an instrument which I will here designate a deed of trust, conveying to Curtis, as trustee, the whole of the Ozier 10,000 acres, and this was done after the filing of the suit by the National Bank of Commerce v. Ozier. The Amarillo National Bank, one of the beneficiaries under such Curtis deed of trust, accepted thereunder without any notice, actual or constructive, of the pendency of the suit of National Bank of Commerce v. Ozier. A judgment was rendered in the suit of the National Bank of Commerce v. Ozier, foreclosing said prior lien, order of sale was issued, and the land sold, that is, the west one-half, and, in the sale of the west one-half, O'Brien became the purchaser thereof, and also took over the balance of the judgment in said cause, as stated. Curtis, the trustee named in the deed of trust, was made a party to the suit of the National Bank of Commerce v. Ozier, but the Amarillo National Bank was not. The Amarillo National Bank, after the filing of the suit, and without any notice of its pendency, sold its debts and liens to appellee Shelton. Under these facts it is insisted that Amarillo National Bank and Shelton are concluded by the judgment in the case of National Bank of Commerce v. Ozier, for the reasons, first, that said bank acquired its lien pendente lite and was not a purchaser for value, and, second, that the so-called deed of trust was a general assignment, and that service on Curtis, the trustee, or assignee, was a service upon the creditors claiming thereunder.

The doctrine of lis pendens does not apply in this case, and the pendency of the suit of the National Bank of Commerce v. Ozier does not conclude any right of Shelton as purchaser from the Amarillo National Bank, because at the very time Ozier executed and delivered the deed of trust to Curtis, and at the time of the acceptance thereunder by the Amarillo National Bank, citation had not been served upon the defendant Ozier. The petition in the case of the National Bank of Commerce v. Ozier was filed in the district court of Potter county, Tex., on August 29, 1922, and citation was immediately issued and delivered to the sheriff of Potter county, but such citation was not served on the defendant Ozier until six days before the next term of the district court for Potter county, which was on the 25th day of September, 1922. Therefore such citation was served on Ozier on the 19th day of September, 1922. The deed of trust, known as the Curtis deed of trust, was executed September 2, 1922, and thereafter the Amarillo National Bank accepted under said deed of trust, as testified to by C. T. Ware. Hence the question here is: All of such transaction having occurred after the filing of the suit of the National Bank of Commerce v. Ozier on August 29, 1922, and before the service of citation on Ozier, the 19th day of September, 1922, was that suit then pending so as to require the application of the harsh rule of lis pendens as against appellee Shelton? In other words, was the filing of the petition and the issuance of citation sufficient to put Shelton on notice of the pendency of the suit so as to bind him (or the Amarillo National Bank) under the judgment in that case?

In the case of Smith v. Cassidy, 73 Tex. 165, 166, 12 S. W. 16, our Supreme Court holds as follows:

"The first question for decision then is, Was Swenson a mortgagee pendente lite? At the time he took the mortgage, so far as the record shows, nothing had been done in the case except to file the original petition. There is nothing to show that King had ever been served with process, and if the original answer was filed by King it was subsequent to the date of Swenson's mortgage. Unless therefore the lis pendens began with the filing of the petition Swenson was not affected by it.

"In the case of Board v. T. & P. Ry. Co., 46 Tex. 327, it was said that 'in some of the courts where lis pendens dates from the service of the subpœna and filing of the bill the suit or action is begun by issuing the subpœna or other process, and not as with us by the filing of the petition or bill setting forth the cause of action.' It was intimated that for this reason a different rule might prevail with us, and the lis pendens be held to commence from the filing of the petition. In England as well as in the United States Courts, * * * suits in chancery are commenced by bill, which prays for the subpœna to be afterwards issued. Yet so far as we have been able to discover, without a single dissent, notice by lis pendens does not take effect until the subpœna is served. 1 Vern. Rep. 319; [Murray v. Lylburn], 2 Johns. Ch. [N. Y. 441] 584; Murray v. Ballou, 1 Johns. Ch. [N. Y.] 576; Bailey v. McGinniss, 57 Mo. 362; see Wade on Notice, § 348; and authorities cited in note 2.

"In some of the states suits are commenced as in our own, by filing a petition, and in others by issuing a writ; but without regard to the act by which the suit is commenced for other purposes, it seems to be universally held that for purposes of notice by lis pendens it does not begin till service of process or its publication in case of an absent defendant. Lyle v. Bradford, 7 B. Monr. 512 [7 T. B. Mon. (Ky.) 111]; Bennett [Bennet] v. Williams, 5 Ohio, 461; Goodwin v. McGehee, 15 Ala. 241; Metcalf v. Smith, 50 [40] Mo. 575. Against such an array of authorities we should not feel inclined to oppose our unsupported opinion under any

circumstances, but we see no reason to doubt their correctness upon principle. We think, therefore, that Swenson was unaffected by any notice of this suit at the time. the mortgage was executed."

The statute then in effect provided for the bringing of a second suit of trespass to try title, and in that case it was so brought, appeal was taken to the Supreme Court, and in an opinion by the Commission of Appeals in the case of Cassidy v. Kluge, 73 Tex. 159, 12 S. W. 13, in which the right to bring a second suit was sustained, and in which the question of the finality of the judgment in the first case was discussed, the Commission of Appeals held that the judgment in the first instance was not final, but such opinion nowhere overrules the opinion of the Supreme Court in the case of Smith v. Cassidy, supra, but simply holds that the Supreme Court, when they rendered the opinion in the last-named case, were passing upon the question from the standpoint of the record not showing service, when, as a matter of fact, service was complete at the time of the signing of the mortgage in controversy, but that the parties to that suit had assumed that the filing of a petition was the beginning of the suit and that lis pendens did apply from that time. Consequently, the decision in the case of Smith v. Cassidy, 73 Tex. 165, 166, 12 S. W. 16, upon the law, was in no wise changed.

In the case of Hanrick v. Gurley, 93 Tex. 469, 54 S. W. 352, the Supreme Court says:

"We assume, as did the court below, that Powers was not affected with notice as a purchaser pendente lite, inasmuch as when he bought from Eliza M. O'Brien she had not been duly served with process making her a party to the suit, though the amended petition had been filed against her, containing the allegations as to the character of the conveyances to her."

See, also, Sparks v. Taylor, 99 Tex. 421, 90 S. W. 485, 6 L. R. A. (N. S.) 381; Humphrey v. Beaumont Irrigating Co., 41 Tex. Civ. App. 308, 93 S. W. 180.

Appellant O'Brien contends that the deed of trust to Curtis is not a deed of trust, but is deed of assignment. I do not think this is correct. There is no provision in the instrument for the trustee to take possession of the property; on the contrary, the instrument expressly provides for the possession to remain in the grantor, and such grantor is obligated to its proper care. Such instrument also provides for sale by the trustee only in the event the grantor fails to pay the debts named in it, and also provides for the payment of any residue of the selling price to the grantor after the payment of said debts. Preston v. Carter, 80 Tex. 388, 16 S. W. 17; Collins v. Sanger, 8 Tex. Civ. App. 69, 27 S. W. 500; H. T. Simon-Gregory D. G. Co. v. Dean (Tex. Civ. App.) 35 S. W. 305; Watterman v. Silberberg, 67 Tex. 100, 2 S. W. 578; Tittle v. Vanleer, 89 Tex. 174, 29 S.

W. 1065, 34 S. W. 715, 37 L. R. A. 337; Hall v. Conine (Tex. Civ. App.) 230 S. W. 823; Scott v. McDaniel, 67 Tex. 315, 3 S. W. 291.

Whatever the rule may be in other jurisdictions, the rule in Texas is that a deed of trust is not a conveyance of title, but is only a security for a debt. Lockridge v. McCommon, 90 Tex. 234, 239, 38 S. W. 33; Adams v. Bateman (Tex. Civ. App.) 29 S. W. 1124, 1125 (writ denied); East Texas Fire Ins. Co. v. Clarke, 79 Tex. 23, 25, 15 S. W. 166, 11 L. R. A. 293. Hence the fact that the second deed of trust given by Ozier to O'Brien and the National Bank of Commerce contained a warranty does not change the status of such instrument from a mere security to a conveyance of title, and such warranty is inoperative to convey anything except as security. If the title to the land conveyed should fail, the recovery by the party for whose benefit the deed of trust was executed would be measured by the amount of his debt and interest.

Under the judgment rendered by the trial court in the case at bar, Perkins, the plaintiff, was required to sell the east one-half of the land before proceeding to sell the west one-half. I wish to say here that I do not concede that the authorities cited in the majority opinion are applicable to the facts in this case, and I do not think that the facts justify the application of the rule for marshaling securities. O'Brien, under the deed of trust to Embry, had a prior lien on the west one-half of the land, subject only to the vendor's lien held by Perkins. Shelton and others, under the Curtis deed of trust, had a first lien on the east one-half of the land, subject only to Perkins' vendor's lien, and had on the west one-half a lien that was subordinate to Perkins' lien and to O'Brien's lien. In point of time, O'Brien's lien bore the first date. O'Brien was, as to the beneficiaries under the Curtis deed of trust, a prior lienholder on the west one-half, and he had the clear right to have paid off the subsequent lienholders who were not made parties, and to have concluded the whole matter by the judgment of the National Bank of Commerce v. Ozier, and to have been subrogated to such beneficiaries' rights, but, as he did not do this, or tender performance, and has never offered to do this, then the junior lienholder in the person of Shelton did have the right to pay off and discharge O'Brien's lien and to be subrogated to O'Brien's rights. This Shelton did. He deposited the full amount of the judgment under which O'Brien claimed in the registry of the court to O'Brien's credit. When he, Shelton, did this, he was entitled to exercise his equity of redemption and to be subrogated to every right then possessed by O'Brien. Pierce v. Moreman, 84 Tex. 596, 20 S. W. 821; Evans v. Borchard, 8 Tex. Civ. App. 276, 28 S. W. 258; Wiggins v. Wagley (Tex. Civ. App.) 190 S. W. 736; Long v. Richards, 170 Mass. 120, 48

N. E. 1083, 64 Am. St. Rep. 281; Wiley v. Ewing, 47 Ala. 418; Harrison v. Wyse, 24 Conn. 1, 63 Am. Dec. 51; King v. Brown, 80 Tex. 276, 16 S. W. 39; Kearby v. Hopkins, 14 Tex. Civ. App. 166, 36 S. W. 506, 513 (writ denied); Hunt v. Makemson, 56 Tex. 9, 16; Whitehead v. Fisher, 64 Tex. 638, 642; Maloney v. Eaheart, 81 Tex. 281, 16 S. W. 1030; Sam P. Hodgen et al. v. William Guttery, 58 Ill. 431; Calhoun v. Lumpkin, 60 Tex. 185; Citizens' National Bank v. Strauss, 29 Tex. Civ. App. 407, 69 S. W. 86, 89; 2 Wiltse on Mortgage Foreclosure, § 1100, p. 1492, section 1105, p. 1495.

If a senior mortgage has been foreclosed by a decree and sale, and the junior mortgagee has not been made a party to the foreclosure, he may, notwithstanding the decree of sale, file his bill against the purchaser to redeem such senior incumbrance, thereby becoming substituted to the rights and interests of the original mortgagee. 4 Ann. Cas. 848.

Because O'Brien had foreclosed as to Ozier, this did not bar the equity of redemption that was formerly vested in Ozier. By the mortgage to Curtis, Ozier transferred his equity of redemption and preserved it in Shelton under that deed of trust. A foreclosure by a prior mortgagee of the mortgagor's interest does not cut off the second mortgagee from his equity of redemption which he acquired with his mortgage. Goodman v. White, 26 Conn. 317.

As I understand the opinion of the majority, they practically hold that, O'Brien having been diligent and having foreclosed his lien, he had thereby foreclosed Ozier's equity of redemption, and, notwithstanding that Shelton was not a party to the suit in which such judgment was rendered, and notwithstanding lis pendens had not precluded him from asserting his rights, that there was sufficient virtue left in the judgment to enable O'Brien to make such judgment effective in cutting off Shelton's right to redeem.

If Shelton was not concluded by the judgment, if there was a failure to lis pendens, the suit of the National Bank of Commerce v. Ozier as to Shelton stood as if it had never been brought. It had, and could have, no existence as to him. It seems to me absurd, then, to say that, while it had no existence as to him, yet it did have as to Ozier. Consequently, through Ozier, Shelton was deprived of one of his substantial rights—the right to redeem from O'Brien. To hold this is to hold that the judgment could effect indirectly what the law would not permit it to do directly. A decree of foreclosure cannot be made to extend beyond the natural effect of the words of the decree. A right vested in a party will not be defeated by extending the language of such judgment. In the case of Goodman v. White, supra, the court says:

"The impropriety of extending the equitable consequences of a decree of foreclosure beyond the natural effect of the words used will appear still more clearly, when it is remembered, that not only are the relations of the second mortgagee to the first, and also to the mortgagor, forcibly changed by a proceeding to which he is not a party, and of which he may have no notice, but the mortgagor is also deprived of his rights as against the second mortgagee, to the same extent as if the second mortgagee had himself foreclosed him. In other words, a petition of foreclosure brought by a first mortgagee will, on the principles now contended for, invest him with all the rights of the second mortgagee against the mortgagor. The right to redeem the second mortgagee may be a valuable privilege to the mortgagor even after the foreclosure by the first incumbrancer; it may enable him to reclaim his estate; and it would seem as he should only be deprived of this right by a proceeding instituted by the voluntary act of the second mortgagee, or by his own. * * *"

But it is said that O'Brien has been diligent and has fortified his rights by legal action, and that equity follows the law. Was O'Brien diligent? It is true that he took a short cut to get his money, but in bringing his suit he deliberately left out the very parties who were equally interested with him in getting their money. This is shown by his making the trustee alone and by his failure to make the beneficiaries parties to his suit. It is true that the suit was brought by the National Bank of Commerce, but, as O'Brien is claiming his rights under that suit, I refer to the transactions as being O'Brien's, as I refer to the Curtis deed of trust when I speak of Shelton's rights.

Why did not O'Brien make the beneficiaries under the Curtis deed of trust parties to the foreclosure suit of the National Bank of Commerce v. Ozier? In fact, because he was not diligent under the law. He could have settled every right in that suit by making the necessary parties, and could have litigated all outstanding rights and disposed of them in that one suit, and, because he did not, he was not diligent. The law will not impute diligence to a party; he must show that he has been diligent. Again, to admit of the claim that O'Brien is to receive benefits from a court of equity puts in motion the very judgment which the law says shall not bind Shelton. If Shelton is allowed to prevail in this case, O'Brien will get, yea, has got, every dollar coming to him. If O'Brien prevails, the balance of the creditors may or may not get their money. Is there any equity in this? O'Brien has never offered to do equity, but is simply holding on to what the law has given him. The majority opinion tenderly applies the doctrines of equity to O'Brien's conduct when O'Brien has not offered to do equity, and is asking for no equitable rights except the marshaling of assets prayed for by him. If we consider that O'Brien's purchase under the order of

sale issued in the case of National Bank of Commerce v. Ozier as to Shelton is a nullity, something that has no existence, then the whole matter is brought back to where it is a contest between two lienholders under deeds of trust. Under his lien O'Brien is entitled to his money. When Shelton pays him, O'Brien has all that he is entitled to; he passes out of the case. It is unthinkable that O'Brien should, by virtue of a judgment which the law holds does not conclude Shelton, be allowed to "backfire" and have such judgment perform the office which the. law says it shall not do:

There is another matter in this connection that I desire to notice. Shelton had the privilege of intervening in the case of National Bank of Commerce v. Ozier. He could have done it if he had wanted to. But, as he did not, this is not to be charged to him in such manner as to again make the judgment obtained in that case conclude his rights. As stated, his was the privilege of intervening and not a duty. McDonald v. Miller, 90 Tex. 309, 39 S. W. 95.

Did O'Brien, or Shelton, after subrogation to O'Brien's rights, have the right to compel Perkins to sell the east one-half of the land before proceeding to sell the west one-half? I think not. O'Brien, having received his money, had no standing in court upon any other claim for relief. Shelton certainly had no right to the marshaling of securities, for the reason that he had no pleading upon which he might be granted such relief. However, while I think this sufficiently disposes of the question of marshaling securities, I do not want to be understood as indorsing the propositions advanced in the majority opinion, and here state my position. The doctrine of the marshaling of securities is one of equitable origin, and is not an absolute rule of law. 3 Pom. Eq. Juris. § 1225. It is a mere inchoate equity, and not an equity which fastens itself upon the situation at the time the successive securities are taken, but one to be determined at the time the marshaling is invoked. 18 R. C. L. p. 456. In applying the litigant's right to have the superior lienholder marshal his securities as to a part against the subsequent lien of the whole of the tract, where such prior lienholder has not offered to do equity, the trial court erred in rendering judgment that Perkins, the blanket lienholder, should first sell the east one-half of the land upon which the Curtis lien is a secondary lien, and such judgment is not supported by any principle of equity, and I think the weight of authority is decidedly against the correctness of such judgment and in favor of the proposition that the superior lienholder should foreclose upon the tract as a whole without reference to such marshaling. Gilliam v. McCormack, 85 Tenn. 597, 4 S. W. 521; Newby v. Norton, 90 Kan. 317, 133 P. 890, 47 L. R. A. (N. S.) 302; Green v. Ramage, 18 Ohio, 428, 51 Am.

276 S.W.—21

Dec. 458; Leib v. Stribling, 51 Md. 285; Hoy v. Bramhall, 19 N. J. Eq. 563, 97 Am. Dec. 695, note.

I am, therefore, of the opinion: (1) That the pendency of the suit of the National Bank of Commerce v. Ozier was not notice to appellee Shelton, for the reasons stated, and he was not estopped to assert his rights in this suit; (2) that appellee Shelton is entitled to exercise his equity of redemption as against appellant O'Brien, and entitled to be subrogated to O'Brien's rights and claims; (3) that the marshaling of securities requiring Perkins to first sell the east one-half of the tract of land before proceeding to sell the west one-half should not be permitted; (4) that the instrument given by Ozier to Curtis, trustee, is not an assignment, but is a deed of trust; (5) that the warranty clause attached to the deed of trust under which the National Bank of Commerce held and asserted its lien did not change the status of that deed of trust from mere security to a conveyance of title.

I am, therefore, of the opinion that Perkins should proceed with the sale of the whole tract of land under his purchase-money lien, and with the proceeds of such sale pay, first, the sums due upon the notes held by him; second, if there be a residue after the payment of the Perkins lien, it should be divided into two sums proportionate in value as the trial court shall ascertain each tract to have, the east one-half and the west one-half, to the other, and that of such sums so divided the residue from the sale of the west one-half, if any, shall then be applied to the payment of all claims due Shelton under his subrogation to O'Brien, and that the residue on both tracts, if any, shall then be applied to the payment of the beneficiaries named in the Curtis deed of trust. Should there then be a residue after the payment of all such debts, such residue shall be paid over to the defendant Ozier.

This last provision is in view of my idea that, Shelton being subrogated to O'Brien's rights, as between him and the other beneficiaries in the Curtis deed of trust and as between them and Ozier, the O'Brien judgment not existing, Ozier, as the owner of the final right of redemption, would be entitled to the payment of any residue after the payment of all the debts named.

### On Motion for Rehearing.

HALL, C. J. O'Brien's motion for rehearing is overruled. The appellee Shelton's motion for rehearing is also overruled.

[11] The Guaranty State Bank, Interstate Cattle Loan Company, and Interstate National Bank have filed an agreed motion which recites that the controversy as to them has been fully settled; that they have sold, assigned, and transferred all right, title, and interest which they had in the land in

controversy and in the subject-matter of the cause to James M. Shelton. They move the court for permission to withdraw all briefs, motions, and pleadings of whatsoever nature, and that the judgment of the district court be affirmed as to them. The Interstate National Bank did not appeal, and the district court judgment was affirmed as to it. The briefs, motions, and pleadings are a part of the record and proceedings in this court, and, since this motion was filed after the judgment of the court was rendered, we have no authority to grant the motion. Shelton's purchase is subject to the judgment of the court as it relates to these parties.

"When a case has been finally determined in this court or in a Court of Civil. Appeals, important rights, dependent upon the judgment, may be acquired by third parties, and sound policy demands the transcript upon which the case has been decided should be carefully preserved. It should not be withdrawn, even with the consent of all parties to the proceeding, and the rule should be enforced without exception." Hart et al. v. West et al., 92 Tex. 416, 49 S. W. 361; Jamison et al. v. N. Y. & T. Land Co., Limited (Tex. Civ. App.) 85 S. W. 482.

If Shelton had acquired the interest of movants before the judgment of this court was rendered, the appeal might have been dismissed as to the Guaranty State Bank and the Interstate Cattle Loan Company upon the ground that the issues as to them had become moot, but we have no authority to grant the motion at this stage of the proceedings. A. A. Fielder Lumber Co. v. Gamble (Tex. Civ. App.) 179 S. W. 522; McMurtry v. Brown (Tex. Com. App.) 228 S. W. 1087; Hedrick v. Matthews (Tex. Civ. App.) 216 S. W. 424.

The motions of Guaranty State Bank and Interstate Cattle Loan Company are also overruled.

All motions overruled.